## United Carbon Co. et al. v. Maynard et ux.

### Dec. 20, 1940.

J. F. Bailey, Judge.

Combs & Combs for appellants.

J. L. Harrington and S. M. Maynard for appellees.

OPINION OF THE COURT BY JUDGE THOMAS—Reversing.

On and for sometime prior to January 2, 1929, the appellees and plaintiffs below, G. D. Maynard and wife (or G. D. Maynard alone) owned a one-half undivided interest in 1,002 acres of land in Martin County, Kentucky, the other one-half undivided interest being owned by a set of heirs known in this record as the "Kirk

heirs." On the date referred to Maynard and wife executed to a corporation known as Kentucky West Virginia Gas Company, an oil and gas lease with the usual stipulations conferring rights on the lessee that such leases usually contain and further providing for a royalty on any oil that might be found and extracted from the land by the lessee; with the additional provision that "Should a well be found producing gas only, then the lessor shall be paid for the gas produced from each of such gas wells at the rate of (one-half of) one and one-half cents per thousand cu. ft. of all the gas used or sold therefrom," &c. Shortly prior to the date of that lease the lessee therein had procured a similar oil and gas lease from the Kirk heirs for their one-half undivided interest in the entire tract, although the Maynard lease purported to embrace only one-half of the entire jointly owned tract of 1,002 acres.

D. S. Keenan, an employee of the lessee at the time, was the one who negotiated the Maynard lease, and it, of course, rested in parol until he could embody the terms in a written lease, which he proceeded to do upon returning to his office located outside of the state of Kentucky, at the home of the lessee. It was then the owner of more than 2,000 such leases in Kentucky and, of course, owned others outside of this state. It, therefore, had some already prepared blank forms which could be altered or changed to fit each particular case. Mr. Keenan explained to his secretary—who had then been acting in that capacity for only about three months—the alterations necessary to be made in the printed forms provided by the lessee in order for the instant lease to conform to the terms agreed upon between him and Mr. Maynard. According to Keenan those terms were, that the total royalty for a paying gas well should be one and one-fourth cents per thousand cu. ft. of gas taken from the well. He was absent while his new secretary was altering the regular printed form of the lease as indicated by him, and she omitted to put in the words "one-half of" in front of the gas royalty rate, since the other one-half of the gas royalty was due to be paid to the Kirk heirs who owned the other one-half undivided interest in the leased tract. In other words, since Maynard owned only a one-half undivided interest in the leased land he was entitled to only one-half the royalty.

When the altered lease and its carbon copy were shown to Mr. Keenan he then directed his secretary to write in the words "one-half of" at the place above indicated and then forward the original and copy to Mr. Maynard to be executed by him and his wife, which was done; but before doing so he (Maynard) changed the amount of the royalty to one and one-half cents per thousand cu. ft. instead of one and one-fourth cents as written in the prepared lease, and as had been agreed upon according to Mr. Keenan. That change was accomplished by striking out "one-fourth" and writing above it in ink "one-half." When the original copy was returned Mr. Keenan, according to his testimony, concluded to accept the change from one and one-fourth to one and one-half cents per thousand cu. ft. of gas without objection. However, the secretary neglected by oversight to insert the omitted words "one-half of" in the carbon copy which was retained by Mr. Maynard, and he says that those words were also not in the original copy when he received it and when he and his wife executed it.

The conditions thus produced remained so, and sometime prior to March 24, 1937, a producing gas well was brought in by the lessee in the Maynard lease, which it on the day last referred to sold and transferred to the appellant, United Carbon Company, with 192 acres covered by the lease surrounding it. The vendee in that sale, United Carbon Company, commenced to use and appropriate the gas from the well that it purchased, and at the provided periods tendered royalty payments to the Maynards of one-half of the agreed royalty rate of one and one-half cents per thousand cu. ft. of gas consumed and appropriated by it. They refused to accept the tendered payments on the ground that they were entitled to the entire agreed royalty rate of one and one-half cents per thousand cu. ft. Defendant, as sub-lessee or purchaser of the gas well, refused to pay any greater sum than it tendered and on August 15, 1938, the Maynards filed this action in the Martin circuit court against defendant, seeking to recover judgment against it for the then accumulated amount of the whole of the gas royalty stipulated to be paid, upon the ground that their carbon copy of the lease on its face so provided, and which they claim was similarly provided in the original copy of the lease made by them, but

which had been fraudulently altered after its return to their lessee, Kentucky West Virginia Gas Company, so as to entitle them to recover only one-half of the entire provided royalty.

The foregoing recited facts were relied on by defendant in defense of the action. Before its submission for trial the Kentucky West Virginia Gas Company, as vendor of defendant, United Carbon Company, intervened, and in its pleading—taken as its answser—it interposed the same facts in defense of the action, and asked that the lease to it by the Maynards be reformed so as to express the true contract originally agreed upon between the parties, and as contained in the alleged altered original copy of the lease then in its possession. Following pleadings made the issues. The case was transferred to equity and upon final submission the court dismissed the intervening petition of the Kentucky West Virginia Gas Company, refused to reform the lease, and gave judgment in favor of plaintiffs for the full amount of the gas royalty as insisted upon by them, and from that judgment both the Kentucky West Virginia Gas Company, and the United Carbon Company prosecute this appeal.

There are two large volumes of evidence in the record, with many exhibits, all of which are supposed to bear upon the decisive issues, but much of which is only remotely relevant, if relevant at all. Many most convincing circumstances are developed in the case showing, to our minds, the correctness of the contention of appellants, and, of course, denying the contention made by plaintiffs.

To begin with, the only two witnesses having any connection with the preparation of the written lease between the Maynards and the Kentucky West Virginia Gas Company testified, as we have hereinbefore set out. Also, some payments for delayed development, as provided in the lease, were paid upon the basis of the contention made by appellants, i. e., one-half of the full amount agreed upon in the lease to be paid in such event. No gas rentals ever became due from the Kentucky West Virginia Gas Company, since it sold the well directly after bringing it in, and when such royalty became due under the lease the amount tendered to plaintiffs was rejected by them for the reason herein-

before stated, but delayed rentals were due and paid and accepted in the amount stated prior to that time. Furthermore, the Maynards owned only one-half interest in the land covered by their lease; but they seek recovery upon the theory that they were the owners of the entire title thereof, and which they claim was the basis upon which their lease was made.

However, in their lease was this stipulation: "If the Lessor does not have title to all the oil and gas under the above premises, or if the acreage or area herein recited is in excess of the true quantity of land in said premises, Lessor agrees on demand made to refund delay rentals and royalties paid and release Lessee from the payment of future rentals or royalties in proportion to the outstanding interests or title," &c. Therefore, if the negotiations for the lease—or it as written without alteration—provided for the payment to lessors of full and complete royalties due to a sole title holder, then under the inserted clause plaintiffs became entitled to collect only one-half of the stipulated royalty, which it is proven in this case was the amount customarily and usually paid as royalty on producing gas wells in that community to a lessor owning the entire title.

It is readily perceived from what we have said that the only issue in the case is one of fact, and the rule is that if we entertain more than a doubt of the correctness of the trial court's finding of fact in this character of case we reverse his judgment in that respect, since this court on appeal from the chancellor's finding of fact in a sense, tries the case de novo. The permanently established rule is that if this court entertains, from the developed testimony and circumstances in the case, no more than a doubt as to the correctness of the court's finding it will affirm the judgment; but if we arrive at the conclusion that there is more than a doubt as to the correctness of the court's finding it then becomes our duty to so determine and frame our directions in accordance therewith. No question of law is here involved, and to undertake to recite the evidence upon which we base our conclusion, more than what has already been done, would render this opinion unduly lengthy, and serve no useful purpose to the profession or future litigants. We deem it only sufficient to say that there is revealed by the entire record what might

be termed unmistakable proof as to the correctness of appellant's contentions as relied upon by them in their defense, i. e., that the agreement was and is that the Maynards were to receive only their proportionate part of the entire royalty as measured by the amount of interest they owned in the leased premises, and that the discrepancies in the written lease occurred in the manner testified to by. defendant's witnesses, which was confirmed by other testimony in the case (but not necessary to recite) in addition to that given by their agent, Keenan, and his secretary.

Wherefore, the judgment is reversed, with directions to set it aside and to dismiss the petition.